526 So.2d 1042 (1988)
Christian SCHMIDGALL, Appellant,
v.
JONES BOATYARD, INC., Appellee.
No. 87-563.
District Court of Appeal of Florida, Third District.
June 21, 1988.
Philip M. Gerson and Edward S. Schwartz, Miami, for appellant.
Hayden & Milliken and Ann Thomas and Robert W. Blanck, Miami, for appellee.
Before BARKDULL, HUBBART and FERGUSON, JJ.
HUBBART, Judge.
This is an appeal by the plaintiff from an adverse final summary judgment entered in a negligence action arising from the loss of equipment from a boat stored at the defendant's boatyard. The central question presented is whether a successor-bailor of personal property has standing to bring a negligence action against the bailee for loss or damage to the bailed property while in the possession of the bailee. We hold that such a successor-bailor has standing to bring such an action provided (a) the bailee receives notice of the successor-bailor's acquisition of the bailed property, and (b) the claimed loss or damage takes place after the successor-bailor acquires the bailed property. Because the plaintiff as successor-bailor in this case claims a loss or damage to the bailed property which took place prior to the time he acquired the said property, he has no standing to bring the instant action and, accordingly, the adverse final judgment entered below must be affirmed.

I
The material facts of this case are entirely undisputed. On October 22, 1984, police officers of Metropolitan Dade County seized a 1970 Hatteras boat (the "Miss Nancy") during a narcotics arrest and delivered the vessel to a boatyard owned by the defendant Jones Boatyard, Inc. with whom it had contractual rights to store seized vessels. Dade County intended to store the "Miss Nancy" at the boatyard pending forfeiture proceedings and an eventual sale of the vessel at an auction.
*1043 At the time of the seizure, Dade County officials prepared a twelve-page inventory listing all the equipment on the "Miss Nancy"; this vessel, in turn, had aboard all of the equipment listed in the inventory when Dade County delivered the vessel to Jones Boatyard. Among the inventoried equipment were: a color television set; rods, reels and fishing tackle; a wet-and-dry vacuum cleaner; radios and transceivers; an autopilot; a Loran navigational system; and a marine depth finder. At no time did Dade officials remove any equipment from the "Miss Nancy" or authorize Jones Boatyard to remove or sell any of such equipment.
Sometime between October 22, 1984, and August 6, 1985, while the "Miss Nancy" was in the possession of Jones Boatyard, Mr. Cleve Jones, the owner of Jones Boatyard, instructed his yard foreman, Robert Harvey, to remove certain equipment from the said vessel. Mr. Harvey and other employees of Jones Boatyard followed Mr. Jones' instructions and removed the stated equipment. As Mr. Harvey testified:
"Well we took off the TV, fishing rods, the reels, fishing reels, pen reels, whatever you want to call them. We took off some motors, Japsco pumps, wet and dry vacuum cleaner, some radios, equipment, some tools, some lines, fenders... . I don't recall some of it."
After Mr. Harvey and the others removed the above equipment, they placed it in the boatyard office and delivered the key to the office to Mr. Jones' wife. This was the last time these items were ever seen.
Thereafter, on August 6, 1985, Dade County officials sold the "Miss Nancy" to the plaintiff Christian Schmidgall at a public auction which took place at Jones Boatyard  after having successfully forfeited the vessel. Prior to the bidding, the plaintiff went to the boatyard at 9:00 A.M. and viewed the vessel. He first spoke to the yard foreman Mr. Harvey who informed him about the equipment on the vessel, including the color radar, autopilot, radios, television and fishing tackle. He then had a brief ten-minute opportunity to board and view the vessel along with other prospective purchasers; during this viewing, he did not see the equipment on board which Mr. Harvey had described to him. He then inquired of various Dade County police officials aboard as to the whereabouts of this equipment; these officials, according to Schmidgall, told him that if the equipment was not on the vessel, it had to be in the police property room. Prior to the vessel being auctioned off, Mr. Timothy Hoffman, a Dade police official, orally announced that this was an "as is" sale. The plaintiff was the successful bidder at the auction, bidding $165,000 for the vessel.
Upon making a deposit immediately after the sale, the plaintiff again asked Mr. Hoffman where the missing equipment was. Either Mr. Hoffman or another Dade police official answered that they would check into the matter. Three days later, the plaintiff paid the balance of the purchase price on the vessel and was informed by Dade officials that they were unable to locate the missing property. The original arresting officer then accompanied the plaintiff to the "Miss Nancy" and compared the inventory list of equipment on board when the vessel was seized against the equipment then on board. Thirty-three items of property were missing from the vessel, including the items which were last seen in Mr. Jones' office prior to the sale in this case.
The plaintiff then instituted a negligence action against Jones Boatyard for the loss of the equipment aboard the "Miss Nancy," which loss occurred prior to the plaintiff's acquisition of the vessel. The plaintiff's theory of liability was that he is the bailor of the vessel in question, having succeeded to Dade County's rights upon purchase of the vessel; he therefore alleged that he had a prima facie negligence claim against Jones Boatyard, as the bailee of the "Miss Nancy," because the loss of the subject equipment took place while Jones Boatyard was in custody of the vessel. The defendant Jones Boatyard filed an answer denying any liability, and moved for a summary judgment below based on the above-stated factual showing. The trial court granted the motion and entered final summary *1044 judgment for the defendant. The plaintiff appeals.

II
The law of bailments seems reasonably clear that:
"The bailor may sell the subject matter of the bailment and thereby confer on the purchaser an immediate and valid title. Thereupon[,] the possession of the bailee becomes that of the purchaser, without any formal delivery of the subject of the bailment to him, a mere notice to the bailee of the sale being ordinarily sufficient... . After the bailee receives notice of the sale[,] the relation of bailor and bailee exists between purchaser and bailee, their acts or conduct with reference to the subject matter of the bailment are governed by the same rules of law as between the original parties to the bailment, and the bailee is not thereafter liable as a bailee to the original bailor."
8 Am.Jur.2d, Bailments § 96 (1980). It therefore follows that the purchaser of bailed property stands in the shoes of the original bailor and may bring suit against the bailee for negligent loss or damage to the bailed property or any other breach of the bailment  provided (1) the bailee receives notice of the sale of the bailed property, and (2) the loss or damage to the bailed property occurs after the purchaser of same acquired title thereto. Riddle v. Blair, 148 Ala. 461, 42 So. 560, 561 (1906); Pine Hill Concrete Mix Corp. v. Alto Corp., 25 A.D.2d 608, 267 N.Y.S.2d 658, 659 (1966), aff'd, 19 N.Y.2d 770, 279 N.Y.S.2d 526, 226 N.E.2d 314 (1967). Stated differently, if the loss or damage to the bailed property occurs before the purchaser acquired title thereto, the original bailor retains the exclusive right to sue the bailee for any loss or damage to the bailed property. Cannon v. Metry, 306 Ky. 515, 208 S.W.2d 520, 521 (1948). On the other hand, if the subject loss or damage occurs after the purchaser acquired title to the bailed property, the said purchaser as the successor-bailor retains the exclusive right, after giving proper notice of the sale, to sue the bailee for loss or damage to the bailed property. Hect v. Boston Wharf Co., 220 Mass. 397, 107 N.E. 990, 993-94 (1915). These results seem eminently sensible to us because ordinarily the seller of personal property does not, by such sale, convey to the buyer any causes of action the seller has with respect to such property, at least in the absence of a specific assignment to that effect.

III
Turning to the instant case, we have no trouble concluding that the plaintiff Christian Schmidgall, as the successor-bailor of the "Miss Nancy," has no standing to sue the bailee Jones Boatyard, Inc. for the loss of equipment from the subject vessel in this case. Although Mr. Schmidgall properly acquired title to the subject vessel by a purchase of same and notified Jones Boatyard, Inc. of the sale, it is clear beyond dispute that the loss occurred before Mr. Schmidgall acquired title to the vessel. This being so, Mr. Schmidgall has no standing to complain about such loss under the above-stated principles of bailment law. Only Dade County, as the original bailor, may complain about the subject loss because it occurred while Dade County owned the property; moreover, Dade County has not assigned its cause of action for said loss to Mr. Schmidgall.
We express no view as to whether the sale of the bailed vessel was an "as is" sale as urged by Jones Boatyard, Inc., because a decision on this issue is entirely unnecessary in this case in light of our above-stated analysis. Similarly, we express no view as to whether Mr. Schmidgall has a cause of action against Dade County for failure to deliver the missing equipment in this sale transaction. The final judgment under review is therefore
Affirmed.